IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JESSE FELDER, | : | |
| | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | No. 13-4438 |
| v. | : | |
| | : | |
| PENN MANUFACTURING INDUSTRIES, INC. ET AL., | : | |
| | : | |
| Defendants. | : | |

MCHUGH, J.                                                                                          OCTOBER 28, 2014

### MEMORANDUM

Plaintiff Jesse Felder has filed suit against several companies (collectively referred to as "Employer" in the complaint) and a coworker, claiming under Title VII that he was subject to a hostile work environment. Specifically, Mr. Felder, an African American, alleges that a coworker, Chris Afflerbach, harassed him continuously throughout his approximately six months of employment because of his race. This harassment eventually culminated in Felder purportedly "snapping" — an episode in which Felder assaulted Afflerbach.

Defendants have now filed a motion to dismiss the Second Amended Complaint, asserting that the Plaintiff has failed to adequately allege facts that would support a hostile work environment claim. Because I find the Second Amended Complaint to be sufficient, the motion will be denied.

I.   **Factual Background**

Plaintiff alleges that the harassment began in the lunch room, where Afflerbach spewed racial epithets repeatedly. After complaining, Plaintiff states that he was advised to avoid

1

Afflerbach. Plaintiff began to eat outside the lunch room, and maintains that he brought his own refrigerator and microwave to work.

Eventually, Plaintiff alleges, word of his complaints reached Afflerbach, who was told by a supervisor not to speak to Plaintiff. Afflerbach then purportedly began a silent campaign of harassment in which Afflerbach would seek out Plaintiff and employ hostile and aggressive stares and intimidating body language. Plaintiff asserts that this continued two to three times per week for five months, resulting in his attending Bible study as a coping mechanism. Eventually, Plaintiff alleges that the harassment became physical when Afflerbach kicked the boxes Plaintiff was working on and shoulder-checked him, spinning him around. Felder further pleads that he reported this incident to his direct supervisor, who reported the incident to the Human Resources Manager, but no action was taken. The next day, the physical confrontation repeated itself. Plaintiff claims to have reported the incident directly to the Human Resources Manager this time, but again no action was taken.

According to Plaintiff, who was 74 at the time and had come out of retirement to work, he secured a nail-studded bat and went looking for Afflerbach with the intent both to scare and warn him that he would no longer tolerate his behavior. Afflerbach shouted at Plaintiff, and Plaintiff reacted, assaulting him. Supervisors intervened, and shortly after he was told to go home, and then Plaintiff was terminated.

## II.     Hostile Work Environment

A hostile work environment claim under Title VII requires a showing of the following elements by the plaintiff: (1) the employee suffered intentional discrimination because of membership in a protected class; (2) the discrimination was severe or pervasive; (3) the discrimination detrimentally affected the plaintiff; (4) the discrimination would detrimentally

affect a reasonable person in like circumstances; and (5) the existence of responsibility on the part of the employer.[1]  Mandel v. M & Q Packaging Corp., 706 F.3d 157, 167 (3d Cir. 2013) (citing Jensen v. Potter, 435 F.3d 444, 449 (3d Cir. 2006), overruled on other grounds by Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53 (2006)).  "The first four elements establish a hostile work environment, and the fifth element determines employer liability."  Id. (citing Huston v. Procter & Gamble Paper Prods. Corp., 568 F.3d 100, 104 (3d Cir. 2009)).

   A.  *"Intentional Discrimination Based on Race"*

Plaintiff in this case makes clear allegations that the discriminatory and abusive actions he suffered were based on his race.  Plaintiff begins by averring that Afflerbach used racial slurs, including "nigger," openly in the workplace, and did not limit his tirades to African Americans, but rather included minorities in general.  Compl. ¶ 18.  This conduct allegedly took place regularly in the lunch room.  ¶ 20.  Plaintiff alleges that this conduct led him to complain, and Afflerbach admits in related testimony that he was told by a supervisor, Curtis Bates, not to bother Plaintiff.  ¶¶ 22, 24.  After Afflerbach had been informed of Plaintiff's complaints about the racist behavior in the lunch room, Plaintiff alleges that Afflerbach began to seek him out and silently harass him on a daily basis for the next five months.  ¶¶ 29-30.  Such provocation is claimed to have included hostile, aggressive stares and body language.  ¶ 31-32.  Plaintiff then alleges that this abuse by Afflerbach became physical.  ¶¶ 41-42.

Defendants maintain that the above-described conduct does not establish that the behavior by Afflerbach was based on Plaintiff's race.  However, the facts alleged are more than enough for purposes of a motion to dismiss.  Plaintiff avers that he was subjected to racial slurs

---

[1] Various appellate decisions have used the term "*respondeat superior*" in describing an employer's potential liability for a hostile work environment.  Because that term is used in many contexts to denote vicarious liability, in my view it is better avoided in cases such as this, where the employer can only be held liable if it knew or reasonably should have known of the conditions faced by its complaining employee.

3

by Afflerbach pertaining to a race of which Plaintiff was a member; Plaintiff lodged a complaint; Afflerbach was informed of that complaint; Afflerbach then began a campaign of harassment against Plaintiff. While it could be argued that the harassment was the result of Plaintiff's complaints, Plaintiff has specifically alleged that it was based on race, ¶ 37, and that is enough for the present inquiry, even if it could have been motivated by both.[2]

### B.  Discrimination as "Severe or Pervasive"

This element is analyzed under the totality of the circumstances, which should include "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Mandel, 706 F.3d at 168 (quoting Harris v. Forklift Sys., Inc., 510 U.S. 17, 23 (1993)). Third Circuit precedent makes clear that these incidents are to be viewed in terms of their cumulative effect rather than as discrete individual events. See Id.

Plaintiff alleges that, in response to Afflerbach's racial tirades in the lunch room, he was forced to stop eating there, and went so far as to bring in his own refrigerator and microwave to avoid the situation. ¶¶ 25, 28. As mentioned, Plaintiff further alleges that he was sought out by Afflerbach at least several times a week for five months, and that Plaintiff was driven to Bible study in order to cope with the ongoing harassment. ¶¶ 30, 32, 35. Eventually, the harassment is claimed to have become physical in nature. ¶ 41. This is certainly enough to satisfy the totality of the circumstances analysis at this early stage in litigation.

### C.  Discrimination as "Detrimentally Affecting" Plaintiff and a Reasonable Person in Like Circumstances

On the facts alleged, it is not difficult to conclude that the conduct alleged would be enough detrimentally to affect an objectively reasonable person. Subjection to racist remarks

---

[2] Although not technically before me on a Rule 12(b) motion, coworkers who testified in related criminal proceedings confirmed racial slurs used by Afflerbach.

4

within one's place of employment, attempts at intimidation, and physical confrontation would certainly create a hostile working environment to a reasonable individual. Furthermore, Plaintiff cites numerous examples of the effects of this discrimination, including his avoidance of the lunch room, his numerous complaints to supervisors, and his coping mechanisms.

### D. *Employer Liability*

The threshold question in determining an employer's liability for a hostile work environment is whether the harasser is the victim's supervisor or coworker. Mandel, 706 F.3d at 169 (citing Huston, 568 F.3d at 104). Here, Afflerbach is a coworker. "When the hostile work environment is created by a victim's non-supervisory coworkers, the employer is not automatically liable." Huston, 568 F.3d at 104 (citing Kunin v. Sears Roebuck & Co., 175 F.3d 289, 293 (3d Cir. 1999)). Rather, liability will only fall upon the employer in such a situation if the employer: (1) failed to provide a reasonable avenue for complaint; or (2) knew or should have known of the harassment and failed to take prompt and appropriate remedial action. Id. (citing Weston v. Pennsylvania, 251 F.3d 420, 426 (3d Cir. 2001)). Phrased another way, "an employer may be directly liable for non-supervisory co-worker . . . harassment only if the employer was negligent in failing to discover the co-worker harassment or in responding to a report of such harassment." Id. at 104-05.

Plaintiff alleges that the Defendant employer failed to provide such a reasonable avenue for complaint. He avers that the employer had no policy in place to report or record harassment or discrimination on the basis of race. ¶53. Plaintiff further alleges that he had informed numerous supervisors of the actions being taken against him by Afflerbach. The Third Circuit has determined that "an employer knew or should have known about workplace . . . harassment if 'management-level employees had actual or constructive knowledge about the existence of a

5

. . . hostile environment.'" Id. at 105 (quoting Andrews v. City of Phila., 895 F.2d 1469, 1486 (3d Cir. 1990)).  Constructive notice in this context exists when "an employee provides management level personnel with enough information to raise a probability of . . . harassment in the mind of a reasonable employer." Id. (quoting Kunin, 175 F.3d at 294).

> [A]n employee's knowledge of allegations of coworker sexual harassment may typically be imputed to the employer in two circumstances: first, where the employee is sufficiently senior in the employer's governing hierarchy, or otherwise in a position of administrative responsibility over employees under him, such as a departmental or plant manager, so that such knowledge is important to the employee's general managerial duties.

Id. at 107.

> Second, an employee's knowledge of sexual harassment will be imputed to the employer where the employee is specifically employed to deal with sexual harassment. Typically such an employee will be part of the employer's human resources, personnel, or employee relations group or department. Often an employer will designate a human resources manager as a point person for receiving complaints of harassment. In this circumstance, employee knowledge is imputed to the employer based on the specific mandate from the employer to respond to and report on sexual harassment.

Id. at 107-08.

Plaintiff first alleges that he complained about the lunch room incident, but does not specify to whom he reported this behavior.  ¶ 22.  Pertaining to this same incident, he claims to have received advice from a supervisor to avoid Afflerbach.  ¶ 28.  It is evident, based on Afflerbach's testimony in the criminal case, cited in the complaint, that he was directed by a supervisor, Curtis Bates, to leave Plaintiff alone.  ¶ 24.

When Afflerbach's conduct allegedly became physical in nature, Plaintiff claims that he reported the incident to Dave Hillard, Plaintiff's immediate supervisor for the purposes of Human Resources reporting, the very same day as the incident.  ¶ 42.  Hillard supposedly told Plaintiff to pay no mind to Afflerbach because Afflerbach was a racist.  ¶43.  Plaintiff also

claims that Hillard reported this incident to the Human Resources Manager, Michael Hartz, who took no action. ¶¶ 44-45.  The next day, when the physical contact was allegedly repeated, Plaintiff asserts that he immediately reported the event to Michael Hartz himself, again with no result.  ¶¶ 48-49.  Of course, it is worth noting that Plaintiff assaulted Afflerbach on this same day, so it is unclear how much time management had to respond to this particular claim.  Nonetheless, it is clear that the Plaintiff has adequately alleged that management level personnel were aware of Afflerbach's harassment for the purposes of this motion, based on previous complaints Plaintiff claims to have made.

### III.    Conclusion

Plaintiff has sufficiently pleaded all of the requisite elements to establish a prima facie Title VII claim based on a hostile work environment.  Accordingly, this Motion to Dismiss the Second Amended Complaint will be denied.

    /s/ Gerald Austin McHugh
United States District Court Judge

7